IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELEWERTA HURTS,

       Plaintiff,                          No. CIV S-04-0932 GEB GGH

     vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

                                    FINDINGS AND RECOMMENDATIONS

       Defendant.

_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Disability Insurance Benefits ("DIB") under Title II, Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), and Disabled Widow's Benefits.  For the reasons that follow, the court recommends plaintiff's Motion for Summary Judgment or Remand be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and judgment be entered for the Commissioner.

BACKGROUND

       Plaintiff, born November 15, 1948, applied for disability benefits on September 11, 1997 and January 13, 1999 with a protective filing date of December 31, 1998. (Tr. at 57, 337, 336, 352, 353.)  Plaintiff alleged she was unable to work since May 31, 1998, due to heart

1

problems, high blood pressure, carpal tunnel syndrome, and as of December, 1998, a fractured right ankle. (Tr. at 50, 77, 106, 340.)

In a decision dated March 29, 2001, ALJ James Kaplan determined that plaintiff was not disabled.[1] The ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. As of November 15, 1998, the claimant meets all of the nondisability requirements for Disabled Widow's Insurance Benefits set forth in Section 202(e) of the Social Security Act. The claimant's prescribed period begins March 17, 1996 and ends March 31, 2003.

3. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

| | | |
|---|---|---|
| | 4. | The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b). Claimant's emotional condition is non-severe. |
| | 5. | These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. |
| | 6. | The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision. |
| | 7. | The claimant has the residual functional capacity to perform a limited range of light work as set forth in the body of this decision. |
| | 8. | The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965). |
| | 9. | The claimant is an "individual closely approaching advanced age" (20 CFR §§ 404.1563 and 416.963). |
| | 10. | The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964). |
| | 11. | The claimant has transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968). |
| | 12. | There are a significant number of jobs in the national economy that claimant can perform which use her transferable skills and are within her residual functional capacity. |
| | 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)). |

(Tr. at 29-30.)

ISSUES PRESENTED

Plaintiff has raised the following issues:  A.  Whether the ALJ Erred in Finding Plaintiff's Emotional Impairment Was Not a Severe Impairment; B.  Whether the ALJ Erred in Failing to Consider Obesity in Combination with Plaintiff's Other Impairments; C.  Whether the ALJ's Credibility Finding Was Supported by Substantial Evidence; D. Whether the ALJ's

3

Decision Improperly Failed to Consider Plaintiff's Witness Evidence; and E. Whether the ALJ Erred in Failing to Analyze the Combined Impact of Plaintiff's Impairments.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A. The ALJ Did Not Err in Finding that Plaintiff's Emotional Impairment Was Not A Severe Impairment

Plaintiff first contends that in considering plaintiff's impairments at step two, the ALJ did not find plaintiff's emotional impairment to be a severe impairment.

At the second step of the disability analysis, an impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis

4

screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

The ALJ only found plaintiff's carpal tunnel syndrome and right ankle fracture status post open reduction internal fixation surgery to be severe. In regard to plaintiff's mental impairment, he found that it was not severe because it only minimally affected plaintiff's ability to work, if at all. (Tr. at 23, 26.)

Plaintiff admitted that she does not receive specific mental health treatment. The pertinent records consist of Dr. Dolnak's psychiatric consultative evaluations, dated February 21 and August 14, 1999. (Tr. at 208, 282.)

On February 21, 1999, plaintiff told this psychiatrist that she had never been seen by a psychiatrist. (Tr. at 209.) She reported that she had occasional feelings of anxiety. Dr. Dolnak gave a provisional diagnosis of adjustment disorder, mild severity, with a GAF of 58.[2] (Id. at 210.) In regard to plaintiff's functional capacity, the psychiatrist opined that plaintiff could interact with supervisors and coworkers, could understand simple job instructions, but would have difficulty with complex ones. She could deal with the public and concentrate for at least two hours. She could withstand the pressures of an eight hour work day. Her prognosis was guarded with limited duration dependant upon her ability to get medical care for her physical problems, and psychosocial support as well as vocational rehabilitation. (Tr. at 210-11.)

In a psychiatric review technique form by a state agency reviewer, dated March 12, 1999, plaintiff's mental impairment was found to be not severe. (Id. at 213.)

On August 14, 1999, plaintiff reported to Dr. Dolnak that she could not do anything, but denied other significant symptoms of depression or anxiety. (Tr. at 282.) Plaintiff

---

[2] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). According to the DSM IV, a GAF of 58 reflects moderate symptoms or moderate difficulties in functioning, such as conflicts with peers or co-workers.

5

also reported that she was taking BuSpar[3] for anxiety and depression, as prescribed by her family doctor, with mild improvement. She had never seen a psychiatrist. (Id. at 283.) Dr. Dolnak made a provisional diagnosis of "adjustment disorder, (mixed anxiety/depression, mild severity)." (Id. at 284.) GAF was 68.[4] (Id.) Based on this assessment, the psychiatrist made the following conclusion:

> The claimant would be able to relate and interact with supervisors and coworkers and understand complex job instructions. She would be able to understand simple, one- or two-step instructions. She would be able to deal with the public. She would be able to attend and concentrate for two hours. She would be able to handle her funds. She would be able to withstand the stress and pressures of an eight-hour work day. She has a limited duration and fair prognosis with continued medical care for carpel tunnel, chronic pain, and hypertension with enhanced psychosocial support and entrance into vocational rehabilitation programs.

(Tr. at 285.)

Although Dr. Dolnak at first assigned a GAF score of 58, he later assigned a higher score of 68, which indicates only mild symptoms, and probably indicated an improvement in plaintiff's mental state. As pointed out by the Commissioner, this score indicates that an impairment is not severe. 20 CFR §§ 404.1520a(d)(1); 404.1521. Plaintiff contends that she was receiving medication for her mental impairment by her treating physicians despite the fact that she was not receiving treatment by a specialist. Dr. Daquioag's notes, to which plaintiff refers, are illegible. See e.g. tr. at 203. If her family physician thought her mental illness was severe enough, presumably he would have recommended treatment by a specialist. This court finds that

\\\\\

---

[3] Buspar is prescribed for anxiety disorders or short term relief of anxiety symptoms. Physicians' Desk Reference 823 (53rd ed. 1999).

[4] According to the DSM IV, a GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." (Id. at 32.)

6

Dr. Dolnak's opinions constitute substantial evidence to support the ALJ's opinion that plaintiff's mental impairment was not severe.

B. <u>Whether the ALJ Erred in Failing to Consider Obesity in Combination with Plaintiff's Other Impairments</u>

Plaintiff next contends that the ALJ failed to consider her obesity in combination with her other impairments. At five feet tall and weighing 180 pounds, she claims her weight should be considered in conjunction with the previous fracture of her right ankle.

The "Listing of Impairments" ("Listings") describe various impairments of thirteen bodily systems, which presumptively preclude a person from working. 20 C.F.R. Pt. 404, Subpt. P, App. 1. <u>See</u> <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing. A mere *diagnosis* of a listed impairment is not sufficient. Specific findings included in each listing also must be met. <u>See</u>, <u>e.g.</u>, <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. <u>See</u>, <u>e.g.</u>, <u>Sullivan v. Zebley</u>, 493 U.S. 521, 531 (1990); <u>Marcia v. Sullivan</u>, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. <u>Young</u>, 911 F.2d at 183.

In the recent Ninth Circuit case, <u>Burch v. Barnhart</u>, 400 F.3d 676 (9th Cir. 2005), consideration of plaintiff's obesity at step three was analyzed in light of <u>Celaya v. Halter</u>, 332 F.3d 1177 (9th Cir. 2003). The <u>Celaya</u> factors are whether, despite plaintiff's failure to specifically raise obesity, it was raised as a disabling factor in plaintiff's report of symptoms, whether it was clear from the record that the obesity was close to the listing criterion, and could exacerbate the other alleged impairments, and whether the ALJ should have been on notice of the need to develop the record on obesity due to plaintiff's pro se status, in light of his observation of plaintiff and other information in the record. <u>Id.</u> at 1182.

Here, the court has scoured the record for any indication of obesity and could find none, other than the pro forma notes by practitioners when conducting a physical exam, which described plaintiff's general presentation. For example, on one visit it was noted: "this is an alert, oriented, moderately to severely obese female, no cyanosis, jaundice or lymphadenopathy." (Tr. at 152.) This type of note was written less than a handful of times in the record, and ranged from describing plaintiff as mildly obese to severely obese. (Tr. at 159, 167, 171.) These four notes comprise the sum total mention of obesity in the record. Plaintiff's various filings with the Social Security Administration did not raise obesity as an impairment, and plaintiff's statement of facts and points and authorities do not reference any indication of obesity in the record. (Tr. at 46, 77, 106, 149, 362.) In her various forms submitted to the Social Security Administration, plaintiff made no mention of her obesity, but identified only depression, high blood pressure, carpal tunnel syndrome, swelling, numbness, weakness and heart problems as the impairments that affected her ability to work. (Tr. at 362.) Neither she nor her counsel ever formally attempted to change this description.

Moreover, plaintiff had counsel at both hearings, yet they did not question her about her weight. (Tr. at 448-514.)

In this case, there was no diagnosis of obesity and no record of a consistently high body weight or BMI (body mass index). As explained by Social Security Ruling 02-01p:

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity.

Furthermore, although SSR 02-01p makes clear that obesity is a disease that must be considered when evaluating disability, and the "combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately,"

8

the ALJ "will evaluate each case based on the information *in the case record.*" (Id.) (emphasis added).

"An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch, 400 F.3d at 683. The ALJ is not omniscient, and was not required to evaluate plaintiff's obesity based on the non-existent record of obesity presented here. If plaintiff was serious about her obesity as being a qualifying circumstance for disability, she and her counsel should have done more to make it an explicit issue throughout the administrative proceedings.

    C.  Whether the ALJ's Credibility Finding Was Supported by Substantial Evidence

Plaintiff contends that the ALJ erred in discrediting her credibility without following the proper analysis.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. Id. at 345-46.[5] If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication,

---

[5] This does not mean, however, that the lack of objective evidence to support the pain alleged is irrelevant to the analysis.

9

treatment, and functional restrictions. See id. at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[6] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Contrary to plaintiff's assertions, the ALJ properly followed the appropriate factors as outlined above. First, he noted that Dr. Daquiaog's records indicated only continued monitoring and conservative treatment for all her problems. He further took note of a right shoulder x-ray which was normal despite her complaints of right and left shoulder pain. (Tr. at 25.) The ALJ then devalued plaintiff's credibility based on an exam conducted by Dr. Shrivastava, in which this consulting internist noted that plaintiff exaggerated her pain symptoms, was unmotivated to the point that she refused to cooperate with range of motion and reflex and grip strength testing so that he could not properly assess her physical limitations, and was a poor historian in regard to her medical history. Despite these problems, Dr. Shrivastava

---

[6] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

was able to report that plaintiff's muscle tone and bulk were normal, and she had full motor strength in both upper and lower extremities. (Tr. at 25.) The ALJ concluded that plaintiff's reports of pain were intermittent and not consistent with the treatment records. (Tr. at 27.) He also noted that treatment of her right ankle since her surgery was very conservative and infrequent. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (plaintiff's claim of extreme pain inconsistent with "minimal, conservative treatment" received). The ALJ added that although she was very sedentary, it was probably a lifestyle choice or based on exaggeration and not necessity. (Id.)

In regard to her daily activities, the ALJ thought the records were also inconsistent. Plaintiff stated in an Exertional Daily Activities Questionnaire and Pain Questionnaire that she could not do any kind of housework; yet during an exam by a psychiatrist, she reported that she does light household tasks (washing dishes and clothes), takes care of personal hygiene, and engages in various other outside activities (grocery shopping, attending church, visiting with neighbors, socializing with family). (Id.) Further supporting a greater activity level were Dr. Hughes' treating orthopedist's notes which indicate a much greater potential activity level. Additionally noted by the ALJ were Dr. Shrivastava's notes of exaggerated pain complaints. (Id.) The ALJ also discussed the inconsistencies in regard to plaintiff's physical therapy. Although she stated that she received no relief from it, the physical therapy notes indicate that she met her goals for her left wrist and partially met her goals for rehabilitation of her right ankle despite absence from her last five appointments. (Id. at 27-28, 223.) Failure to follow treatment is a significant factor in the credibility analysis. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

The medical records support the ALJ's analysis. Dr. Hughes assessed plaintiff's functional capacity on July 13, 2000, and found that plaintiff could sit for eight hours, stand and walk for one hour each, lift or carry up to ten pounds continuously, lift up to twenty pounds frequently and carry this amount continuously, and never lift or carry more than twenty-one

1  pounds. (Tr. at 429.) Plaintiff could not do simple grasping with the right or left hand, but could
2  push and pull and do fine manipulation with both hands. (Id. at 430.) Plaintiff could
3  continuously bend, squat, crawl, climb and reach. (Id.) Dr. Hughes' progress notes are
4  consistent with the ALJ's conclusion. On April 26, 1999, it was noted that plaintiff had almost
5  full range of motion in her right ankle. (Tr. at 224.) Although it was slightly swollen, she was
6  doing very well. (Id.)

7         Dr. Shrivastava's records are also consistent with the ALJ's interpretation.
8  Plaintiff was a poor historian and exaggerated her symptoms. (Tr. at 287, 288.) Despite her
9  allegations that she could not do anything, this physician saw her take her glasses out and put
10 them back in, take off her wrist and ankle braces, and walk down the ramp from the clinic to her
11 car, although with the appearance of discomfort. (Id. at 288.) Plaintiff also refused to do range
12 of motion exams for the hip, knee and ankle joint, stating she will lose her balance due to her
13 brace; however she removed her brace with little difficulty. (Id. at 289.) Plaintiff also refused to
14 perform range of motion testing for shoulders, elbows, wrists and fingers. (Id.) Dr. Shrivastava
15 could not check plaintiff's grip strength because she complained of pain. (Id. at 290.) This
16 internist concluded:

> Based on the above mentioned history and physical examination,
> although multiple physical functional limitations cannot be ruled
> out, a quantitative estimate of this claimant's limitations is difficult
> due to poor history, exaggerated symptoms, and lack of motivation
> during the examination as well as the claimant's perceived and
> expressed pain during the testing. The claimant seems to continue
> to report pain even with extremely superficial and gentle touch as
> well as extremely careful pain sensitive examination of her
> extremities, joints, and reflexes.

22 (Id.)

23        Plaintiff concedes that she could do some activities on a short term basis, but not
24 on a sustained basis during a forty hour work week. The functional capacity assessment by Dr.
25 Hughes refutes this contention. Based on the foregoing record evidence, substantial evidence
26 supports the ALJ's credibility determination.

1  D. Whether the ALJ's Decision Improperly Failed to Consider Plaintiff's Witness
2  Evidence

3  Plaintiff contends the ALJ erred by not even mentioning the third party evidence
4  of plaintiff's cousin, Louise Barbarian, who had completed a daily activities questionnaire. (Tr.
5  at 125.)

6  An ALJ is required to "consider observations by non-medical sources as to how
7  an impairment affects a claimant's ability to work." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th
8  Cir. 1987). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must
9  take into account, unless he or she expressly determines to disregard such testimony and gives
10 reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.
11 2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)). Similar to the ALJ's role
12 in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he
13 ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for
14 resolving ambiguities." Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting
15 Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

16 Plaintiff's cousin stated in response to the questionnaire that plaintiff needed help
17 with personal grooming, paying bills, cooking and cleaning, and that she does no household
18 chores. (Tr. at 126-27.) She goes out of the house two or three times a week but needs help
19 getting in and out of the car, and opening and closing the car door. (Id.) Due to the pain,
20 plaintiff has a hard time sleeping and is fussy and frustrated at times. (Id. at 126, 128, 129.)
21 Although the ALJ did not specifically refer to this questionnaire, he did discuss the pain
22 questionnaire and daily activities questionnaire completed by plaintiff herself which were
23 consistent with the questionnaire completed by Barbarian. (Tr. at 27, 137-141.) Therefore, this
24 lay witness' observations were cumulative to the evidence set forth and thoroughly addressed by
25 the ALJ. Therefore, the fact that the ALJ did not specifically reject this third party evidence was
26 \\\\\

harmless error based on the reasons set forth above. An error which has no effect on the ultimate decision is harmless. Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).

E. Whether the ALJ Erred in Failing to Analyze the Combined Impact of Plaintiff's Impairments

Plaintiff argues that the ALJ failed to consider all of her impairments in combination. For the reasons discussed above, that the ALJ properly found plaintiff did not have a severe mental impairment, and his failure to consider her obesity was proper because plaintiff failed to present evidence of this impairment. Plaintiff does not allege what other impairments the ALJ should have considered in combination, but makes only the general statement that she has "several physical and emotional impairments." The ALJ properly considered plaintiff's carpal tunnel syndrome and her right ankle fracture, but found that although severe, they did not meet or equal a listed impairment. (Tr. at 23.) He thoroughly discussed these impairments and their effect on plaintiff's ability to work throughout his decision. The ALJ further addressed plaintiff's claims of heart problems and hypertension. He found, however, that a more restrictive residual functional capacity was not warranted because various diagnostic studies indicated only minor abnormalities in the heart and hypertension that was well controlled, and a treadmill stress test was unremarkable. (Tr. at 24.)

CONCLUSION

The court finds the ALJ's assessment to be fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS RECOMMENDED that plaintiff's Motion for Summary Judgment or Remand be denied, the Commissioner's Cross Motion for Summary Judgment be granted, and Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten (10) days after service of the objections.  The parties are
3  advised that failure to file objections within the specified time may waive the right to appeal the
4  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 6/21/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Hurts932.ss.wpd